UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,          Case Number 16-20821

v.         Honorable David M. Lawson

TIMOTHY WILCOX,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Timothy Wilcox has filed a motion supplemented by counsel asking the Court to reduce his sentence to time served and commit him to home confinement under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Wilcox was sentenced on May 9, 2018 by the Honorable Avern Cohn to 77 months in prison for his leadership role in an identity fraud scheme. Wilcox argues that a sentence reduction is justified by his medical conditions (obesity and Type 2 diabetes) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. However, Wilcox has been inoculated against the virus, and the infection rate at his Bureau of Prisons (BOP) facility is quite low. Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

Wilcox organized a scheme in which he and two codefendants stole identities to obtain student loans and tax refunds fraudulently. The sophisticated scheme, which involved the defendants registering for classes at educational institutions across the country, lasted several years until it ended in 2014.

On December 14, 2016, a federal grand jury charged Wilcox with conspiracy to defraud the government, four counts of making fraudulent claims, three counts of mail fraud, three counts of theft of public money, and seven counts of aggravated identity theft. On August 15, 2017, Wilcox pleaded guilty under a Rule 11 plea agreement to the conspiracy charge.

On May 9, 2018, Judge Cohn sentenced Wilcox to 77 months in prison and ordered that he pay restitution to the United States in the amount of $1,390,501.36 ($969,642.26 to the Department of Education and $420,859.00 to the Internal Revenue Service). Although the agreed-upon advisory guideline range was 57 to 71 months, the probation department calculated the guideline range higher, at 91 to 115 months, due to a prior out-of-state imprisonment and a two-level increase in the offense level.

Wilcox began serving his sentence on June 14, 2018 and is scheduled to be released on December 14, 2023. He presently is confined by the BOP at FCI Allenwood, a medium-security facility in Pennsylvania that houses about 1,100 inmates. Wilcox is 48 years old and suffers from obesity (body mass index [BMI] around 33) and Type 2 diabetes.

On December 14, 2020, Wilcox submitted a request for compassionate release to the Warden of FCI Allenwood, but he never heard back. He then filed a *pro se* motion for compassionate release in this Court on March 10, 2021. He filed a supplemental brief with the assistance of counsel on April 6, 2021. If released from prison, Wilcox intends to live with his wife (a codefendant sentenced to one day, time served) and return to work at Airmaster Fan. Wilcox also proposed an alternate plan to live with a friend who is crime and drug free.

The most recent data disclosed by the BOP indicates that there are no active coronavirus cases among inmates or staff at FCI Allenwood. To date, 501 inmates and 50 staff members tested positive and have recovered; no one affiliated with the prison died from the virus. Wilcox received

his first dose of the Moderna vaccine on March 1, 2021. Medical Records, ECF No. 92, PageID.639. The BOP has reported that Wilcox received the second dose on schedule, and the BOP reports that 1,441 inmates received full inoculations at the low and medium security Allenwood facilities.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Wilcox relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the

factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However,

the defendant still must satisfy the other two requirements, and his "failure to meet any one of those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government does not dispute that Wilcox's request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Wilcox argues that his pre-existing medical conditions consisting of Type 2 diabetes and obesity (BMI of around 33) render him vulnerable to complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *Id.* at *2 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and

unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain personal characteristics face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing *Coronavirus Disease 2019 (COVID-19)*, People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize that obesity and Type 2 diabetes are factors that seriously elevate the risk of complications for anyone who is infected with the COVID-19 disease. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention (May 13, 2021) https://bit.ly/3vlpWcH. The government

concedes that Wilcox's medical history "*potentially* qualifies as 'extraordinary and compelling reasons'" for his release.  Response, ECF No. 85, PageID.426 (emphasis in original).

However, the recognition that an inmate has one or more serious and certain medical risk factors does not end the analysis of whether extraordinary and compelling circumstances warrant his immediate release. That is because another obviously and highly pertinent consideration is the probability that the defendant is likely to contract an infection again from the coronavirus in his present situation, which in this case appears to be remote. Recent reports indicate that the probability of infection at Allenwood FCI, although once relatively high, now is very low, with no active cases among inmates or staff.  Further, even as the incidence of infection at Allenwood has declined, the probability of a future severe outbreak also has been diminished by the BOP's rapid and robust deployment of newly available vaccines, which so far have been administered fully to 421 staff and 1,551 inmates in the Allenwood facilities.  The likelihood of a severe outbreak only will diminish further as the vaccination program proceeds, and federal courts have acknowledged that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk. *United States v. Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases).

Moreover, Wilcox now has received both doses of the Moderna vaccine.  Medical Records, ECF No. 92, PageID.639.   Although the defendant accurately observes that vaccinations may not entirely protect people from contracting COVID-19 or from suffering from severe symptoms, vaccination currently is among the best-known methods of preventing infection. *CDC Real-World Study Confirms Protective Benefits of mRNA COVID-19 Vaccines*, Ctrs. for Disease Control & Prevention (Mar. 29, 2021), https://bit.ly/2QOfr2A ("COVID-19 vaccines are highly effective in preventing SARS-CoV-2 infections in real-world conditions among . . . groups [that] are more

likely than the general population to be exposed to the virus."); *Vaccine Effectiveness*, Ctrs. for Disease Control & Prevention (May 10, 2021), https://bit.ly/34STqU1 (recognizing that "no vaccine is 100% effective," but observing that vaccines "are effective at preventing COVID-19" or developing severe illness in "real world conditions."). The CDC estimates that a single dose of the Moderna vaccine reduces the chances of infection by 80 percent and a second dose reduces the chances to over 90 percent. *Ibid.* Thus, because Wilcox received a vaccine and is held in a facility with no active cases, his case does not present an extraordinary or compelling reason for his release.

III.

Wilcox has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion and supplemental motion for compassionate release (ECF No. 80, 91) are **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: July 15, 2021